**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

───────────────────────────────

**CARLOS SANCHEZ, 05-A-6204,**

                                        **Plaintiff,**                    **09-CV-469S(Sr)**

**v.**

**LESTER WRIGHT, et al.,**

                                        **Defendants.**

───────────────────────────────

**<u>DECISION AND ORDER</u>**

        Pursuant to 28 U.S.C. § 636(c), the parties have consented to the

assignment of this case to the undersigned to conduct all proceedings in this case,

including the entry of final judgment.  Dkt. #15.


        Plaintiff commenced this *pro se* action seeking relief pursuant to 42

U.S.C. § 1983 for the denial of sufficient pain medication during his incarceration at the

Attica Correctional Facility ("Attica"), commencing October 3, 2008.  Dkt. #4.  Plaintiff

was transferred to the Great Meadow Correctional Facility ("Great Meadow"), on or

about May 28, 2009, and amended his complaint to allege denial of sufficient pain

medication at this facility as well.  Dkt. #23.  Specifically, plaintiff alleges that Dr. Rao

and P.A. Schunk at Attica and Dr. Karandy and Dr. Maddocks at Great Meadow

refused his continued requests for narcotic pain medication and instead prescribed anti-

inflammatory medication for his chronic right wrist and left elbow pain.  Dkt. ##4 & 23.

Dr. Lester Wright, retired Deputy Commissioner/Chief Medical Officer for the

Department of Correctional Services ("DOCS"), is also named as a defendant because plaintiff complained to Dr. Wright about the denial of continued narcotic pain medication.  Dkt. #4.

Currently before the Court is defendants' motion for summary judgment. Dkt. #35.  For the following reasons, defendants' motion for summary judgment is granted.

## FACTUAL BACKGROUND

On March 12, 2008, while incarcerated at Great Meadow, Dr. McGill performed surgery on plaintiff's right wrist to correct an old fracture which had not healed properly.  Dkt. #36, ¶¶ 4-5.  Plaintiff received a prescription for Percocet and MS Contin for two weeks.  Dkt. #36, ¶ 5.  On March 24, 2008, plaintiff complained of hip pain and was prescribed Ultram 50 mg twice a day for five days.  Dkt. #36, ¶ 6.  On March 27, 2008, plaintiff was seen for a post-operative visit and prescribed Percocet, every eight hours, for four weeks.  Dkt. #36, ¶ 7.  On March 28, 2008, plaintiff was caught with three pills in his mouth.  Dkt. #36, ¶ 7.  On April 4, 2008, the Percocet order was extended for an additional three weeks.  Dkt. #36, ¶ 7.  On April 23, 2008, plaintiff continued to complain of pain in his right arm, prompting the physician to continue the Percocet order for two more weeks, but  decreased the dosage to two pills twice a day. Dkt. #36, ¶ 8.  The Percocet order was extended an additional two days as  plaintiff was scheduled to be seen by the surgeon on this date.  Dkt. #36, ¶ 8.

During examination by Dr. McGill on May 8, 2008, plaintiff complained of left elbow pain, prompting Dr. McGill to recommend removal of the pin from plaintiff's left elbow.  Dkt. #36, ¶ 9.  Plaintiff was continued on Percocet for an additional two weeks, with the dosage decreased to one pill twice a day.  Dkt. #36, ¶ 9.  On June 18, 2008, the dosage of Percocet was decreased to one pill twice a day.  Dkt. #36, ¶ 11. On June 19, 2008, Dr. McGill ordered physical therapy for plaintiff's wrist and determined no follow-up treatment was necessary.  Dkt. #36, ¶ 10.  On June 23, plaintiff's dosage of Percocet was decreased to one pill per day for three days.  Dkt. #36, ¶ 11.  During this post-operative period, Plaintiff was observed cheeking Percocet, *i.e.*, holding the pill in his cheek rather than swallowing it.  Dkt. #36, ¶ 10.

On June 30, 2008, plaintiff complained of left elbow pain, left arm pain and back pain, for which he was prescribed Tylenol and an analgesic balm.  Dkt. #36, ¶ 11.  Following complaints of left shoulder pain on July 1, 2008, plaintiff was prescribed Motrin 600 mg every six hours.  Dkt. #36, ¶ 11.  Plaintiff was seen by a Nurse Practitioner on July 21, 2008, who noted no limitation in the range of motion of plaintiff's right wrist and observed no acute distress.  Dkt. #36, ¶ 13.

Plaintiff complained of pain in his left elbow on August 15, 2008, but requested any consultation be held until he was transferred.  Dkt. #36, ¶ 15.  Plaintiff was prescribed Percocet, two pills every morning for a month.  Dkt. #36, ¶ 15.  That prescription was continued for another month on September 8, 2008.  Dkt. #36, ¶ 16. On September 23, plaintiff was prescribed two tablets of Percocet twice a day for a week following complaints of pain in his left arm.  Dkt. #36, ¶ 17.

Plaintiff was transferred to Attica on October 2, 2008 and reported to sick call seeking Percocet for wrist pain the next day.  Dkt. #36, ¶ 18.  Plaintiff continued to request Percocet at sick call on October 16, October 20, and November 3, 2008, refusing offers of Tylenol, Ibuprofen or aspirin.  Dkt. #36, ¶¶ 19-20.  On November 12, 2008, Dr. Rao examined plaintiff and prescribed Ultram, 50 mg, two pills at night, for one week.  Dkt. #36, ¶ 21.  Dr. Rao refused to continue the prescription for Ultram following examination on November 20, 2008, prescribing Naprosyn, 500 mg, twice a day, instead.  Dkt. #36, ¶ 22.  Dr. Rao also ordered occupational therapy.  Dkt. #38, ¶ 22.  Dr. Rao advised plaintiff that

> Ultram was no longer indicated for his post-surgery condition (as his surgery had taken place approximately nine months earlier).  The Plaintiff was at that time in the rehabilitative stage, which does not require Ultram, and Ultram was not appropriate . . . for his post-surgery condition.

Dkt. #38, ¶ 22.  Plaintiff discontinued the Naproxyn due to digestive issues.  Dkt. #36, ¶¶ 23-24.

An examination on December 11, 2008 following plaintiff's complaints of left elbow pain and request for Ultram revealed full range of motion of plaintiff's left elbow and no neurological issues.  Dkt. #36, ¶ 24.  Plaintiff was prescribed a different anti-inflammatory medication.  Dkt. #36, ¶ 24.  On March 6, 2008, plaintiff complained that the hardware in his left elbow seemed to have moved and complained of pain radiating to his left shoulder.  Dkt. #36, ¶ 25.  Plaintiff complained of pain in his right wrist and left elbow radiating to his back on March 30, 2009.  Dkt. #36, ¶ 26.  Plaintiff complained of neck pain and left arm pain on April 30, 2009, at which time it was noted

plaintiff was scheduled for an appointment at the orthopedic clinic.  Dkt. #26, ¶ 28.  He

was prescribed an analgesic balm.  Dkt. #36, ¶ 28.  Plaintiff was given Tylenol with an

analgesic balm on May 4, 2009 following his complaint of pain in his left shoulder and

elbow.  Dkt. #36, ¶ 29.   On May 14, 2009, Dr. Coniglio, an orthopedist, recommended

removal of the hardware in plaintiff's left elbow.  Dkt. #36, ¶ 29.

Plaintiff was transferred to Great Meadow on or about May 28, 2009.  Dkt.

#36, ¶ 30.  Plaintiff requested Ultam for right hand and left elbow pain on June 1, 2009.

Dkt. #36, ¶ 30.  Plaintiff was prescribed an anti-inflammatory twice a day for one month

pending an orthopedic consult.  Dkt. #36, ¶ 30.  On July 10, 2009, Dr. Rubinovich, an

orthopedic surgeon, examined plaintiff and recommended continuation of Ultram for

plaintiff's right wrist pain and removal of the hardware in plaintiff's left elbow.  Dkt. #39,

p.23.  On July 20, 2009, Dr. Karandy prescribed Ultram for one month, with the

expectation that once plaintiff underwent surgery on his left elbow, the Ultram would no

longer be needed.  Dkt. #39, ¶ 32. Surgery was performed to remove hardware from

plaintiff's left elbow on August 10, 2009.  Dkt. #36, ¶ 32.  Plaintiff was prescribed

Ultram, 50 mg, three times a day for one month following his surgery.  Dkt. #36, ¶ 33.

Plaintiff's surgeon, Dr. Rubinovich, reported that plaintiff was doing well on September

11, 2009.  Dkt. #36, ¶ 37.

Dr. Karandy examined plaintiff on September 17, 2009 and declined to

continue the prescription, opting instead for Motrin, 600 mg, twice a day.  Dkt. #36,

¶ 38.   Dr. Karandy saw the plaintiff again on September 23, 2009, noting Dr.

Rubinovich's documentation that plaintiff was recovering well from his surgery and a pattern of requests by plaintiff for Ultram, suggesting intense drug-seeking behavior. Dkt. #39, ¶ 40.   On September 24, 2009, Dr. Karandy observed that plaintiff appeared comfortable and in no actue distress and discussed with plaintiff

> the issue of pain medication, including Ultram, and why I would no longer prescribe Ultram to him.  Specifically, I would have advised him that he has been provided with an alternative non-narcotic analgesic (an anti-inflammatory), which is the appropriate medication for a chronic inflammatory condition that the patient has.  I advised that Ultram or any other narcotic-like medication was therefore not indicated for his current medical issues, as narcotic and narcotic-like pain medications are addictive and can have many serious side-effects to a patient's kidneys and liver, and thus can cause serious harm to a patient.  It is my firm belief that narcotic or narcotic-like medication[s] are only indicated when a patient has a debilitiating and painful condition, and in most cases such medications can only be prescribd for short periods of time.

Dkt. #39, ¶ 41.  Plaintiff requested discharge from physical therapy on September 28, 2009, stating that his left should and elbow were "doing better."  Dkt. #39, ¶ 42.


Plaintiff was examined by Dr. Maddocks on November 4, 2009, who examined plaintiff's elbow and wrist, found no cause for continued pain and denied plaintiff's request for Ultram as not clinically indicated.  Dkt. #36, ¶ 45.  Following examination on December 17, 2009, Dr. Maddocks diagnosed neuropathic pain (nerve damage) in the distal hands and arms, bilaterally, and prescribed Ultram.  Dkt. #26, ¶ 47.  On February 18, 2010, Dr. Maddocks continued the Ultram, 50 mg, twice a day for another month.  Dkt. #36, ¶ 50.

On March 11, 2010, plaintiff requested continuation of the Ultram to address his complaints of pain from a large lipoma (fatty build-up) in his left scapula. Dkt. #36, ¶ 51.  Dr. Maddocks considered plaintiff's request to be drug-seeking behavior and, noting the range of motion in plaintiff's arms and wrist to be normal and without complaints of pain, decided to wean plaintiff off of Ultam by decreasing the dosage to 50 mg once per day for thirty days before discontinuing the drug.  Dkt. #36, ¶ 51.  Dr. Maddocks requested a consultation with Dr. Thompson regarding the lipoma, with both physicians agreeing that no treatment was indicated because the mass was small, soft and nontender.  Dkt. #36, ¶ 52.

On June 18, 2010, Dr. Maddocks examined plaintiff and found no significant physical abnormalities, noting plaintiff's ability to use his right hand to type and write letters despite complaints of severe pain.  Dkt. #36, ¶ 53.  Dr. Maddocks discussed with plaintiff a plan to manage his complaints of pain without Ultram and prescribed a non-narcotic pain medicine, Nortriptylene, 25 mg, at bedtime and continued Ibuprofen for pain management.  Dkt. #36, ¶ 53.  The dosage of Nortriptylene was increased to 50 mg on July 2, 2010.  Dkt. #36, ¶ 54.  Plaintiff was caught smuggling Nortriptylene on July 13, 2010, at which time it was discontinued.  Dkt. #36, ¶ 55.  Nortriptylene was prescribed again on July 13, 2010, and continued for five months.  Dkt. #36, ¶ 55.

Upon examination by Dr. Karandy on September 22, 2010, no swelling or tenderness was noted in plaintiff's right wrist and no swelling was noted in plaintiff's left

elbow, although there was a slight limitation in extension.  Dkt. #36, ¶ 58.  Dr. Karandy observed plaintiff's apperance to be calm and comfortable.  Dkt. #36, ¶ 58.  Dr. Karandy found plaintiff's appearance and examination, as well as his continuing hand-written and typed letters requesting Uitram inconsistent with plaintiff's complaints of debilitating pain in his wrist.  Dkt. #39, ¶ 58.  Upon examination by Dr. Maddocks on October 21, 2010, no cause for severe pain was discovered.  Dkt. #36, ¶ 59.

Plaintiff transferred out of Great Meadow on November 4, 2010.  Dkt. #36, ¶ 60.

## DISCUSSION AND ANALYSIS

Defendants argue that plaintiff received appropriate treatment for his medical needs, including multiple physical examinations by a variety of medical providers, consultations with specialists, surgical intervention, post-surgical narcotic medication, long-term anti-inflammatory medication, and phyiscal therapy.  Dkt. #40, pp.4-5.  Defendants assert that plaintiff's disagreement with their professional judgment that narcotic medication was not appropriate for plaintiff's ongoing complaints of chronic pain is insufficient to state a claim of deliberate indifference to a serious medical need.  Dkt. #40, p.5.

Plaintiff responds that he has chronic and strong pain as a result of two surgeries on his left elbow and one surgery on his right wrist and that the medical treatment for these complaints has not been appropriate.  Dkt. #48.

**Summary Judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, and must give extra latitude to a *pro se* plaintiff."  *Thomas v. Irvin*, 981 F. Supp. 794, 798 (W.D.N.Y. 1997) (internal citations omitted).

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998).  A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise."  *Bryant*, 923 F.2d at 982 (internal citations omitted).   A party seeking to defeat a motion for summary judgment

must do more than make broad factual allegations and
invoke the appropriate statute.  The [party] must also show,
by affidavits or as otherwise provided in Rule 56 of the
Federal Rules of Civil Procedure, that there are specific
factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).


## Deliberate Indifference to Serious Medical Needs

In *Estelle v. Gamble*, the United States Supreme Court determined that
"deliberate indifference to serious medical needs of prisoners constitutes the
'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment" to the
United States Constitution.  429 U.S. 97, 104 (1976).  To establish an unconstitutional
denial of medical care that rises to the level of an Eighth Amendment violation, a
prisoner must prove, beyond mere conclusory allegations, that the defendant acted with
"deliberate indifference to [his] serious medical needs."  *Estelle*, 429 U.S. at 104.  More
specifically, the prisoner must demonstrate both that the alleged deprivation is, in
objective terms, "sufficiently serious," and that, subjectively, the defendant is acting with
a "sufficiently culpable state of mind."  *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir.
1994), *cert. denied*, 513 U.S. 1154 (1995).  Both the objective and subjective
components must be satisfied in order for a plaintiff to prevail on his claim.  *Hathaway
v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).


Under the objective component, in assessing whether a medical condition
is "sufficiently serious," the Court considers all relevant facts and circumstances,
including whether a reasonable doctor or patient would consider the injury worthy of

treatment; the impact of the ailment upon an individual's daily activities; and, the severity and persistence of pain.  *See Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).  A serious medical condition exists where the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.  *Id.*  Indeed, the Second Circuit has held that the alleged deprivation must be "sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists."  *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998).  "[I]n most cases, the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm."  *Smith v. Carpenter*, 316 F.3d 178, 187 (2d Cir. 2003).

The subjective component for a claim of deliberate indifference to a serious medical need requires that the plaintiff establish that the defendant acted with a "sufficiently culpable state of mind" so as to violate the Eighth Amendment's cruel and unusual punishment clause.  *Wilson v. Seiter*, 501 U.S. 294, 298 (1991).  "[A] prison official does not act in a deliberately indifferent manner unless that official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"  *Hathaway*, 37 F.3d at 66, *quoting Farmer v. Brennan*, 511 U.S. 825, 837 (1994).  In *Estelle*, the Supreme Court ruled that deliberate indifference may manifest itself in a doctor's refusal to administer needed treatment, a prison guard's intentional denial or delay in granting an inmate access to

-11-

medical care, or intentional interference with prescribed treatment.  *Estelle*, 429 U.S. at 104-05.

 "The subjective element of deliberate indifference 'entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Hathaway*, 99 F.3d at 553, *citing Farmer v. Brennan*, 511 U.S. 825 (1994); *see also Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003), *cert. denied*, 543 U.S. 1093 (2005). The Supreme Court further stated in *Estelle* that, "an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.'"  *Estelle*, 429 U.S. at 105-06.  Thus, the Supreme Court added,

> [a] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.  In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id*. at 106; *see also Chance*, 143 F.3d at 703 (stating "[s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation").  Indeed,

> it is well-established that mere disagreement over the proper treatment does not create a constitutional claim.  So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation.

*Chance*, 143 F.3d at 703.  Thus, "a delay in treatment based on a bad diagnosis or erroneous calculus of risks and costs, or a mistaken decision not to treat based on an erroneous view that the condition is benign or trivial or hopeless, or that treatment is unreliable, or that the cure is as risky or painful or bad as the malady" will not constitute deliberate indifference.  *Harrison v. Barkley*, 219 F.3d 132, 139 (2d Cir. 2000).

Setting aside the question of whether plaintiff's subjective complaints of pain constitute a serious medical need, it is clear that defendants were not deliberately indifferent to those complaints.  Dr. Rao determined that Ultram was no longer indicated given that plaintiff was nine months post-surgery with no surgical  complications relating to his right wrist and no limitations in the range of motion in his left elbow.  In place of Ultram, Dr. Rao prescribed anti-infalmmatory medications and analgesic balm, as well as therapy.  Plaintiff was prescribed Ultram before and after surgery to remove a pin in his left elbow, but that prescription was discontinued in favor of anti-inflammatory medication once Dr. Rubinovich documented his surgical recovery.  Dr. Maddocks subsequently prescribed Ultram for neuropathic pain, but determined that plaintiff should be weaned from the drug after noting normal range of motion in plaintiff's arms and wrist and plaintiff's attempts to shift the source of his complaints of pain to a lipoma, which Dr. Maddocks perceived as drug seeking behavior.  In lieu of Ultram, Dr. Maddocks prescribed a non-narcotic pain medicine, Nortriptylene, and continued anti-inflammatory medication.  Dr. Karandy and Dr. Maddocks each explained their concerns about ongoing use of Ultram to plaintiff and discussed pain management options with him.  Such attention to plaintiff's complaints of pain is not indicitive of

deliberate indifference to plaintiff's medical concerns, but indicates instead a disagreement between plaintiff and his medical providers with respect to the treatment provided, which is insufficient to defeat defendant's motion for summary judgment. Accordingly, this Court concludes that plaintiff's claim of deliberate indifference to his medical needs in violation of the Eighth Amendment is without merit.

## CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment (Dkt. #35), is granted.

**SO ORDERED.**

DATED:     Buffalo, New York
           February 17, 2012

 *S/ H. Kenneth Schroeder,Jr.*
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**